**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

_____

| | | |
|---|---|---|
| **DERRONDAS REED,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 10-CV-2030** |
| | ) | |
| **DAVE REDNOUR, Warden,** | ) | |
| **Menard Correctional Center[1],** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

_____

Petitioner, Derrondas Reed, filed this Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (#1) on February 22, 2010.  Respondent filed his Answer (#15) on August 25, 2010.  Petitioner's Reply (#20) was filed on November 10, 2010.  For the following reasons, Petitioner's Petition (#1) is DENIED.

FACTUAL BACKGROUND

The facts determined by a state court are presumed to be correct unless rebutted by the petitioner with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Badelle v. Correll, 452 F.3d 648, 659 (7th Cir. 2006).  The following factual background relating to Petitioner's claims has been taken from the Rule 23 unpublished direct appeal decision on Petitioner's case rendered by the Illinois Fourth District Appellate Court on August 1, 2007:

In late December 2005 or early January 2006, Jasmine Deviner ended her relationship with

_____

[1]Dave Rednour has replaced Donald Gaetz as the Warden of Menard Correctional Center, where Petitioner is currently incarcerated.  The clerk is directed to substitute Dave Rednour for Donald Gaetz as the Respondent in this case.

Petitioner after more than seven years of dating. Deviner testified that Petitioner did not want the relationship to end. The two continued to talk and see each other after the breakup. On January 12, 2006, Deviner got off work around 4:00 pm and received numerous calls from Petitioner. She eventually went over to the home of her cousin, Latoyia Chapman, and continued to receive calls from Petitioner, in which he threatened her life. About a quarter after midnight, Chapman needed to go somewhere, and Deviner had to move her car out of the driveway so Chapman could leave. After Deviner returned her car to the driveway, she heard Chapman yell at her to get down. Deviner looked up, saw Petitioner on her car's hood, and dialed 9-1-1. Petitioner then came to her driver's side window and started shooting. Deviner received at least five separate gunshot wounds. Chapman also identified Petitioner as the shooter.

After he stopped shooting, Petitioner ran toward a Jeep. When Deviner saw Petitioner return, she ran into Chapman's home and went to the bathroom where she shut the door. She later heard glass break, and Petitioner came to the bathroom with a gun. Petitioner dragged Deviner out of the house and into the front yard. Petitioner and an accomplice, Michael Jarrett, tried to lift Deviner, but they let go of her and got into the Jeep.

The State of Illinois charged Petitioner with attempt (first degree murder) (720 Ill. Comp. Stat. 5/8-4(a), 9-1(a)(1) (West 2006)), aggravated battery with a firearm (720 Ill. Comp. Stat. 5/12-4.2(a)(1) (West 2006)), two counts of home invasion (720 Ill. Comp. Stat. 5/12-11(a)(3) (West 2006)), and unlawful possession of a weapon by a felon (720 Ill. Comp. Stat. 5/24-1.1(a) (West 2006)). The unlawful possession of a weapon charge was later severed from the other charges for trial purposes. In May 2006 a jury found Petitioner guilty of attempt (first degree murder), aggravated battery with a firearm, and one count of home invasion. He was found not guilty of the other count of home invasion.

On May 9, 2006, Petitioner filed a pro se motion, in which he alleged he was denied effective assistance of counsel due to: (1) a lack of communication between himself and counsel; (2) counsel not representing him to counsel's full potential; (3) counsel's failure to subpoena the witnesses Petitioner requested; (4) counsel not cross-examining witnesses to the best of his legal ability; and (5) counsel not being prepared for trial. On June 2, 2006, the court held a <u>Krankel</u> hearing[2] on Petitioner's ineffective assistance of counsel claim. Petitioner indicated that he wanted Joyce Reed and Rhonda Reed to testify about Petitioner's whereabouts at the time of the shooting to show he had an alibi. He also wanted Deviner recalled because he claimed her testimony was a lie and the result of threats by the trial court and prosecution, which he could support through the testimony of Greg and Monterio Lagrone. Petitioner further stated he had only one meeting with counsel before trial and that counsel did not prepare a defense and cross-examine the witnesses to the best of his ability.

When questioned by the court, defense counsel denied Petitioner ever mentioned any witnesses that could provide an alibi for Petitioner. Petitioner had mentioned the Reeds could testify to his prior drug usage and the possibility he was intoxicated on the night of he shooting in support of an involuntary intoxication defense. Counsel explained to Petitioner that Illinois no longer provided for such a defense. Counsel also claimed he met with Petitioner three to four times prior to trial. The court noted it had observed counsel's performance during trial and found counsel did the best cross-examinations he could under the circumstances, as the evidence against Petitioner was overwhelming. The trial court concluded that appointment of separate counsel to investigate Petitioner's ineffective assistance of counsel claim was not necessary. Defense counsel then filed an amended post-trial motion, which was denied. Petitioner was sentenced on June 21, 2006. The court found the

---

[2]<u>People v. Krankel</u>, 464 N.E.2d 1045 (Ill. 1984) (a hearing held to determine whether a criminal defendant should have new counsel represent him at a posttrial motion where the defendant alleges his trial counsel was ineffective).

aggravated battery with a firearm conviction merged with the attempt (first degree murder) conviction and sentenced Petitioner to consecutive terms of 35 (attempt) and 25 (home invasion) years in the Illinois Department of Corrections (IDOC). A motion to reconsider sentence was denied.

Direct Appeal

In his direct appeal, Petitioner raised one issue: the trial court erred when it denied his request to have a different attorney appointed to represent him concerning his post-trial claims that his trial attorney rendered ineffective assistance of counsel. The Illinois Fourth District Appellate Court rejected Petitioner's argument, noting that the trial court was in compliance with Krankel when it discussed Petitioner's allegations with Petitioner and Petitioner's counsel, and relied on its own knowledge of defense counsel's performance. The appellate court found that defense counsel did investigate the Reeds as possible witnesses based on the information Petitioner provided, which concerned a voluntary intoxication defense, not an alibi defense. The appellate court also found that Deviner was not forced to testify due to "threats" from the prosecution and court. Rather, the court stated that the trial court's informing Deviner of the consequences of failing to appear on a subpoena and offering a police officer to be with her during her lunch break for her safety were not threats. Further, if defense counsel cross-examined Deviner in front of the jury about her discussion with the court on appearing for a subpoena, Petitioner could be prejudiced if Deviner said she did not want to testify due to threats from Petitioner. The court also found that Deviner was not the only State witness who could identify Petitioner as the shooter and that counsel's cross-examination was trial strategy entitled to great deference.

Direct Appeal Petition for Leave to Appeal (PLA) to Illinois Supreme Court

In his direct appeal PLA to the Illinois Supreme Court, Petitioner argued the appellate court erred under Illinois law when it failed to appoint him separate counsel to investigate his claims of

ineffective assistance of trial counsel. The Supreme Court denied his PLA on November 29, 2007.

<u>Petitioner's Post-Conviction Petition</u>

Petitioner filed a pro se Post-Conviction Petition on August 8, 2008. In the petition, Petitioner made the following arguments:

Claim I- he was denied effective assistance of counsel on direct appeal when appellate defense counsel failed to argue that the evidence was insufficient to prove Petitioner guilty beyond a reasonable doubt;

Claim II- the prosecutor's misconduct by misstating facts and inflaming the jury;

Claim III- his sentence was improperly enhanced because the statutes involved violate the proportionate penalties clause, were enacted in violation of the single subject rule, and subject Petitioner to double jeopardy;

Claim IV- the trial court improperly prevented Petitioner from presenting evidence that trial counsel was ineffective for failing to impeach witnesses with their pre-trial inconsistent statements;

Claim V- defense counsel was ineffective for failing to produce witnesses who would have contradicted Deviner's testimony at trial and was ineffective for failing to make efforts to call or produce witnesses who would have given notice of an alibi defense (Reeds);

Claim VI- defense counsel was ineffective for neglect in preparation of trial and during the actual trial itself for failing to (1) investigate the veracity of Jasmine Deviner's post-trial hearing testimony, in which she claimed that she recanted her trial testimony in a post-trial affidavit because she was afraid of certain individuals (Greg and Mario Lagrone); (2) investigate Tiffany Althoff and Tasha Flagg, who would have impeached the credibility of Deviner's post-trial testimony that she provided a false affidavit only because she was afraid of certain individuals; (3) adequately consult with Petitioner prior to trial; (4) obtain Petitioner's phone records to impeach the assertions of the

State's witnesses; (5) consult with a forensic expert to produce favorable evidence for Petitioner at trial; (6) request a continuance to adequately prepare for trial; (7) investigate whether Deviner's post-trial testimony disavowing her post-trial affidavit was coerced by the police and prosecutor, and whether her accusation concerning threats from Greg and Mario Lagrone were false; and (8) meaningfully prepare for trial, which prevented Petitioner from testifying.

Claim VII- he was denied effective assistance of counsel on the direct appeal of his conviction and sentence;

Claim VIII- he was denied his Constitutional rights to Due Process and Equal Protection by the cumulative effect of the violations set forth in Claims I-VIII.

On August 31, 2007, Petitioner's pro se Post-Conviction Petition was found "frivolous or patently without merit" and dismissed with prejudice. Petitioner appealed, but on May 9, 2009, his appellate counsel filed a motion to withdraw under <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987), concluding that Petitioner's appeal presented no issue of merit upon which Petitioner could realistically expect to obtain any relief from the court. The appellate court then accepted Petitioner's pro se brief. In this brief, Petitioner listed all of the claims made in his Post-Conviction Petition. He argued the Petition stated the "gist" of a constitutional claim. He argued more generally about prosecutorial error, improper sentencing, trial counsel's lack of preparation denying him the opportunity to testify, and trial counsel's failure to investigate the possibility that Deviner's post-trial hearing testimony was coerced by the police or prosecution.

On September 29, 2009, the Fourth District Appellate court issued a Rule 23 Order finding Petitioner's claims without merit. It rejected his arguments on the issues of ineffective assistance of appellate counsel for failure to raise reasonable doubt, prosecutorial misconduct during rebuttal closing argument, sentence enhancement, ineffective assistance of trial counsel, and cumulative error.

<u>Petitioner's Post-Conviction Petition PLA to the Illinois Supreme Court</u>

Petitioner then filed a PLA with the Illinois Supreme Court. In the PLA he referenced the Fourth District decision denying the appeal of his Post-Conviction Petition. Petitioner recited a "Statement of Facts." In that statement, Petitioner listed all the grounds he put in his Post-Conviction Petition. The grounds were basically listed in single sentence form, except for the ground alleging trial counsel's ineffectiveness for failing to investigate Deviner's alleged coerced recantation testimony at the post-trial hearing. In the "Argument" section of the PLA, however, Petitioner focused on (1) how the appellate court on direct review would not let him raise some of his claims and (2) trial counsel's failure to investigate State witnesses after the post-trial hearing who had "been threatened and coerced by the State's Attorney and Police to give false testimony." Petitioner explained this rendered trial counsel ineffective. The last paragraph in Petitioner's PLA stated:

"Defendant/Appellant herein (Incorporates) <u>as part of this Petition for Leave to Appeal to the Illinois Supreme Court</u> Each and Every Claim Presented in his Post-Conviction Petition filed (August 8, 2008), Some of which were not even addressed by the Circuit Court or Appellate Court for the Fourth Judicial District of Illinois, Also (Incorporating) his Additional Points and Authorities <u>and Reply Brief in Appeal No. 4-08-0644</u> as part of his Petition herein."

Petitioner also attached, as part of the appendix, the Fourth District Appellate Court's Order of September 29, 2009. The Illinois Supreme Court rejected his PLA on January 27, 2010.

## ANALYSIS

Petitioner filed this current Petition for a Writ fo Habeas Corpus by a Person In State Custody Pursuant to 28 U.S.C. § 2254 (#1) on February 22, 2010. In his Petition Petitioner reiterates basically the same claims he made in his Post-Conviction Petition. They are:

Claim I:

(A) the trial court erred when it failed to appoint new counsel to represent Petitioner at the post-trial hearing, at which he would have shown that trial counsel was ineffective for failing to:

(1) call Joyce and Rhonda Reed to testify as alibi witnesses;

(2) recall Deviner to testify that the police and prosecutor coerced her to implicate Petitioner at trial.

(3) communicate with Petitioner;

(4) properly cross-examine witnesses and impeach them with readily available evidence;

(5) investigate matters occurring immediately after the Krankel hearing;

(6) give the State notice in compliance with discovery rules of alibi witnesses which precluded Petitioner from using an alibi defense.

(B) the trial court was in error for failing to remove defense attorney and appoint new counsel during trial (this claim was not raised in the PLA, and not raised on direct review- rather direct review only concerned the trial court's actions in the post-trial hearing);

Claim II: appellate counsel was ineffective, on direct appeal, for failing to challenge the sufficiency of the evidence.

Claim III: the prosecutor erred when, in his closing argument, he described the Petitioner's shooting of the victim as more brutal than "put[ting] an animal down," and said that defense attorneys "routinely" argue that the State's case does not "make sense."

Claim IV: Petitioner's extended-term sentence for attempted murder violates the proportionate penalties clause, the bar against double jeopardy, and Illinois's single-subject rule.

Claim V: the trial court erred when it prevented Petitioner from presenting evidence that trial counsel was ineffective for failing to impeach State witnesses with their pre-trial statements.

Claim VI: Petitioner was denied effective assistance of trial counsel where counsel failed to:

(1) investigate the veracity of Deviner's post-trial hearing testimony, in which she claimed that she recanted her trial testimony in a post-trial affidavit because she was afraid of certain individuals (Greg and Mario Lagrone);

(2) investigate Tiffany Althoff and Tasha Flagg, who would have impeached the credibility of Deviner's post-trial testimony that she provided a false affidavit only because she was afraid of certain individuals;

Claim VII: Petitioner was denied effective assistance of trial counsel where counsel failed to:

(1) consult with Petitioner before trial;

(2) obtain Petitioner's telephone records in order to impeach the testimony of State witnesses Deviner and Latoyia Chapman that Petitioner made threatening phone calls prior to attacking Deviner;

(3) consult with a forensic expert to determine whether any physical evidence tended to weaken the State's case;

(4) request a continuance to prepare for the trial;

(5) prepare for trial to such an extent that Petitioner was prevented from testifying.

Claim VIII: appellate counsel was ineffective for failing to raise any of the aforementioned claims on direct appeal (with the exception of Claim I-A, which counsel did raise on direct review).

Claim IX: the cumulative effect of these errors rendered the State court proceedings fundamentally unfair.

In his Answer, Respondent argues that part of Claim I is procedurally defaulted and the State law aspect of that claim is non-cognizable. Respondent then argues that Petitioner has procedurally defaulted all other claims (except Claim VI) because he failed to raise them in one full complete round of State court review. Respondent does concede that Claim VI has been properly exhausted in the

State courts, but argues that it is meritless.

<u>Claims I-B, II, III, IV, V, VII, VIII, and IX</u>

Respondent argues that all of Petitioner's remaining claims, except Claim VI, are procedurally defaulted because they were not raised in one complete round of state court review.

Procedural Default

"To obtain federal habeas review, a state prisoner must first submit his claims through state review." <u>Promotor v. Pollard</u>, 628 F.3d 878, 889 (7th Cir. 2010). A petitioner must exhaust his remedies in state court, and "[i]n Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." <u>Guest v. McCann</u>, 474 F.3d 926, 930 (7th Cir. 2007). This requirement applies equally to direct appeals and post-conviction petitions: to preserve a claim made in a post-conviction petition for habeas review, a petitioner must present the claim in his direct appeal of the denial of the post-conviction petition and in the PLA to the Illinois Supreme Court. <u>Smith v. Gaetz</u>, 565 F.3d 346, 352 (7th Cir. 2009). To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his claims to the state courts by articulating both the operative facts and applicable law that entitle him to relief. <u>Promotor</u>, 628 F.3d at 889.

Here, Respondent argues Petitioner failed to present nearly all his claims in a full round of state court review. Specifically, Respondent focuses on Petitioner's PLA of his post-conviction petition to the Illinois Supreme Court. In the facts section of the PLA, Petitioner listed all the claims made in his post-conviction petition. In the PLA's argument section, however, Petitioner only really addresses the failure of defense counsel to investigate state witnesses who claimed they were threatened and coerced

to testify against him by the police and prosecutors.[3]  The rest of the Petitioner's short argument concerned the Fourth District Appellate Court's ignoring his claims while focusing on procedural default issues and keeping out evidence he felt would benefit his case.  As noted above, Petitioner included an "incorporation" section in his PLA to try and incorporate all previous arguments made in his post-conviction petition.

Petitioner attached the Fourth District Appellate Court Order of September 29, 2009, which rejected his appeal of the denial of his post-conviction petition.  Respondent argues that, as the only issue addressed in the argument section of the PLA was counsel's ineffectiveness for failure to investigate witnesses, all other issues are waived.  Respondent believes that merely incorporating prior arguments and documents by reference does not adequately present those claims to the Illinois Supreme Court so as to preserve them for federal habeas relief.

In Baldwin v. Reese, 541 U.S. 27 (2004) the Supreme Court of the United States held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32.  After the lower courts denied him collateral relief, the prisoner, Reese, filed a petition for discretionary review in the Oregon Supreme Court and, in relevant part, made a claim that he had received ineffective assistance of both trial court and appellate counsel.  Baldwin, 541 U.S. at 29. However, while Reese claimed his trial counsel's conduct violated federal law, he did not say his separate appellate ineffective assistance claim violated federal law.  Baldwin, 541 U.S. at 30.  Upon filing for federal habeas review, Reese argued a federal constitutional claim that his appellate counsel

_____

[3]Even this discussion is very brief and without citation to any legal authority.  Petitioner just states that defense counsel did not investigate the recantation evidence and this rendered him ineffective.

was ineffective.

The Supreme Court began its analysis "by assuming that Reese's petition by itself did not properly alert the Oregon Supreme Court to the federal nature of Reese's claim. On that assumption, Reese failed to meet the 'fair presentation' standard[.]" <u>Baldwin</u>, 541 U.S. at 30-31. The Court went on to write:

> "[T]o say that a petitioner 'fairly presents' a federal claim when an appellate
> judge can discover that claim only by reading lower court opinions in the case is to say
> that those judges *must* read the lower court opinions- for otherwise they would forfeit
> the State's opportunity to decide that federal claim in the first instance. In our view,
> federal habeas corpus law does not impose such a requirement." <u>Baldwin</u>, 541 U.S.
> at 31 (emphasis in original).

The Court noted that though appellate court judges often read lower court opinions, they do not necessarily do so in every case and can sometimes decide a legal question on the basis of the briefs alone. This is particularly true, the Court wrote, where the question at issue is to exercise a discretionary power of review and in such instances the nature of the issue may matter more than does the validity of the lower court decision. <u>Baldwin</u>, 541 U.S. at 31. The Court found that the Oregon Supreme Court is just such a court with a discretionary power of review and had specific instructions in the Oregon Rules of Appellate Procedure for seeking review in that court. The Court concluded that a litigant wishing to raise a federal issue can easily indicate the federal law basis for the claim in his state-court petition or brief "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin</u>, 541 U.S. at 32.

The Seventh Circuit addressed this issue in <u>Lockheart v. Hulick</u>, 443 F.3d 927 (7th Cir. 2006).

The state prisoner, Lockheart, was convicted in Illinois of attempted aggravated sexual assault. Lockheart sought federal habeas review of many issues, including "whether the trial judge was biased[,] plus an antecedent procedural question: whether Lockheart defaulted this subject by omitting it from his petition for leave to appeal in the Supreme Court of Illinois." Lockheart, 443 F.3d at 929.

The Seventh Circuit began its analysis by defining "fairly presenting" a claim to mean "articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law." Lockheart, 443 F.3d at 929. The court acknowledged that Baldwin held that the "fairly present" "requirement is not met if a judge must go outside the four corners of the document in order to understand the contention's nature and basis." Lockheart, 443 F.3d at 929. Rather, "a petition must *contain* each contention, and not just point to some other document where it might be located." Lockheart, 443 F.3d at 929 (emphasis in original).

The Seventh Circuit continued:

"[Lockheart's] petition for leave to appeal to the Supreme Court of Illinois did not present a judicial-bias argument. Instead, he asks the Supreme Court to read other documents, such as his appellate brief and his "Petition for Leave to Appeal as a Matter of Right and in the Alternative" that he had filed in support of an earlier request for review. The state judges were under no obligation to track down and peruse those documents.

Now if state rules entitle litigants to present arguments by incorporation, then use of that approved device would preserve these issues. But Lockheart does not identify any rule of the Supreme Court of Illinois allowing this maneuver, and we could not find one. Supreme Court Rule 315(c) limits petitions to 20 pages, and such

a cap is incompatible with incorporation by reference. A 50-page appellate brief "incorporated into" a petition would cause it to exceed the limit. Lockheart's petition was 22 pages (the court accepted it despite the length); the documents that Lockheart purported to incorporate by reference were substantially longer. So we are left with Baldwin: only arguments in the main body of the petition have been preserved, and the judicial-bias claim therefore has been forfeited." Lockheart, 443 F.3d at 929.

Here, Petitioner listed the different claims in his fact section, but did not address them in his argument section, relying instead on the incorporation paragraph instructing the Illinois Supreme Court to incorporate his post-conviction petition and appellate briefs filed in support of the post-conviction petition, none of which he attached to his PLA. The only argument made in the main body of his PLA so as to alert the Illinois Supreme Court of his claims, is that trial counsel was ineffective at the post-trial hearing for failing to investigate recantation and alibi evidence of various witnesses. Therefore, all the claims in the Petition (#1) that he sought to "incorporate" in his PLA, forcing the Illinois Supreme Court to look outside the main body of the argument and the four corners of the PLA, are not preserved and are procedurally defaulted. See Lockheart, 443 F.3d at 929. Further, although Petitioner attached the Fourth District Appellate Court opinion affirming the dismissal of his post-conviction petition, that opinion would not have put the Illinois Supreme Court on notice as to what claims Petitioner was raising for review in his PLA. Rather, only the ineffective assistance for failure to investigate claim was articulated factually and legally in any sort of detail (and even then, Petitioner does not present much of a legal argument).

A claim that has been procedurally defaulted either through the exhaustion path or through the adequate-and-independent-state-ground path is subject to equitable exceptions. Miranda v. Leibach, 394 F.3d 984, 992 (7th Cir. 2005) (adequate and independent state ground doctrine); Bintz v. Bertrand,

403 F.3d 859, 863 (7th Cir. 2005) (failure-to-exhaust doctrine). Procedural default may be excused if (a) the petitioner shows cause for the failure to raise the issues at the appropriate time and demonstrates actual prejudice resulted from this failure; or (b) the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750(1991). "Cause for a default is ordinarily established by showing that some external obstacle prevented the petitioner from presenting his claim to the state courts." Bintz v. Bertrand, 403 F.3d 859, 863 (7th Cir. 2005). Petitioner has not averred to or otherwise demonstrated that any external obstacle prevented him from presenting his claims to the Illinois Supreme Court for its discretionary review. He could have simply stated in the body of his PLA his claims, their factual bases, and the legal support behind the claims. He did not do that. He simply sought to incorporate by reference all the claims he had made below, which, as stated above, is insufficient to put the court on notice of the nature of his claims. There was no external obstacle preventing Petitioner from presenting his claims and thus no cause to excuse procedural default.

A "fundamental miscarriage of justice" is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schulp v. Delo, 513 U.S. 298, 321 (1995). A petitioner must "demonstrate innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict." Buie v. McAdory, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). In the instant claim, Petitioner has not provided any new evidence to demonstrate his actual innocence, but simply restated claims made in the state courts about trial counsel's ineffectiveness, prosecutorial misconduct, and sentencing issues, among other claims.

This Court may not review a habeas petition if the petitioner presents a defaulted claim but fails to argue that his default should be excused under one of the two exceptions. Crockett v. Hulick, 542 F.3d 1183, 1193 (7th Cir. 2008) (when petitioner fails to argue excuse for procedural default, "we

cannot consider his claim"); <u>U.S. ex rel. Bell v. Pierson</u> 267 F.3d 544, 555 n.6 (7th Cir. 2001)

(petitioner's failure to argue cause and prejudice causes it to be waived). Here, Petitioner has not

argued that his procedurally defaulted claims fall under either of the two exceptions. Thus, Claims I-B,

II-V, VI(i)-(vi), (vii), and VIII and IX, are denied, as they are found to be procedurally defaulted.

Therefore, the only issues that can be said to be exhausted, and will be addressed on the merits,

are:

Claim I-A: the trial court erred at the <u>Krankel</u> hearing in not appointing new counsel for

Petitioner's post-trial motion (this was exhausted on direct appeal).

Claim VI: defense counsel's failure to investigate State witnesses and investigate whether

Deviner's post-trial testimony disavowing her post-trial affidavit was coerced by the police and

prosecutor, and whether her accusation concerning threats from Greg and Mario Lagrone were false.

Each of these claims will be dealt with in turn.

Claim I-A

In his first claim, Petitioner argues that the trial court erred when it failed to appoint new

counsel to represent Petitioner at the post-trial hearing. Respondent argues that the claim, as it relates

to the trial court's actions, is a non-cognizable state claim and that, even if it were cognizable, the state

court decision on the matter was not contrary to, or an unreasonable application of, clearly established

Supreme Court precedent.

State Law

Errors of state law, in and of themselves, are not cognizable on habeas review. <u>Perruquet v.</u>

<u>Briley</u>, 390 F.3d 505, 511 (7th Cir. 2004), citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). "The

remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so

only if a state court's errors have deprived the petitioner of a right under federal law can the federal

court intervene." Perruquet, 390 F.3d at 511. Categorizing a claim on habeas review as "non-cognizable" is another way of saying that the claim presents no federal issues at all. Perruquet, 390 F.3d at 511.

In Dolis v. Gilson, 2009 WL 5166228 (N.D. Ill. Dec. 23, 2009) the petitioner, Dolis, claimed that his trial judge should have conducted an inquiry into the performance of his appointed counsel. The district court, after determining that a Krankel hearing need not have been held, went on to write that "even if the holding in Krankel did apply in this case, Dolis alleges that his trial court's behavior violated Illinois state law, not federal law." Dolis, 2009 WL 5166228, at *13. The court concluded:

> "Moreover, no clearly established federal law set forth by the Supreme Court dictates that a trial judge must conduct an official inquiry when a defendant writes letters of complaint about appointed counsel. Because Dolis does not allege any violation of federal law as determined by the Supreme Court and no Supreme Court precedent mandates the inquiry sought by Dolis, this Court may not grant the writ of habeas corpus over Dolis's judicial inquiry claim." Dolis, 2009 WL 5166228, at *13.

Here, as in Dolis, Petitioner is arguing the trial court was in error for failing to take action with regard to "ineffective" defense counsel. As it pertains to post-trial ineffectiveness, the court agrees with Respondent that the U.S. Supreme Court has not established procedures governing the scope of post-trial ineffective assistance inquiries, such as those established in Krankel. See Dolis, 2009 WL 5166228, at *13. Krankel is based solely on state law, and as such, Petitioner's claim relating to post-trial ineffective assistance is non-cognizable in a federal habeas petition. Therefore, the decision of the Fourth District Appellate Court on direct appeal affirming the trial court's decision at the Krankel hearing was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1); Carey v. Musladin, 549 U.S. 70, 74 (2006).

<u>Claim VI</u>

Respondent concedes that Claim VI was exhausted by Petitioner in a round of State court review of his post-conviction petition. This claim holds that trial counsel was ineffective for failing to investigate whether Deviner's post-trial testimony disavowing her affidavit was coerced by the police or prosecutor. The background of Petitioner's claim is as follows:

On May 2, 2006, during Petitioner's jury trial, Deviner testified that Petitioner was the individual who shot her, and Petitioner was found guilty the next day. However, on May 5, 2006, she sent a letter to the court recanting her testimony. Deviner claimed she had been pressured to testify by the prosecution and court and threatened with jail. Then, at the <u>Krankel</u> hearing on June 2, 2006, Deviner said her trial testimony was truthful and that the recantation letter was a lie. Deviner claimed she had been threatened and forced to recant by Petitioner's friends and family members after her May 2, 2006 trial testimony. In in camera testimony before the court, Deviner named Greg and Monterio Lagrone as the people who threatened her life.

Petitioner's argument centers around counsel's ineffectiveness for failing to follow through with Petitioner's suggestion that Deviner was lying at the post-trial hearing. Petitioner alleges counsel failed to investigate whether the Lagrones actually threatened Deviner because the Lagrones were not in the area on the alleged dates. Petitioner further argues that Deviner herself disavowed her post-trial testimony, informing several people (Tiffany Althoff, Tasha Flagg, and Rhonda Reed) that she had been forced to lie at the post-trial hearing. Petitioner's Petition provides no affidavits supporting these contentions, other than his own.

<u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a writ of habeas corpus on behalf of a person in custody pursuant to a State court judgment shall not be granted with

respect to any claim that was adjudicated on the merits unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Application of Federal Law

A state court decision is clearly contrary to established law if the state court applied a rule that contradicted the governing law as set forth in Supreme Court cases, or if, being confronted with a set of facts materially indistinguishable from those examined by Supreme Court precedent, the state court arrived at an opposite result. Williams v. Bartow, 481 F.3d 492, 498 (7th Cir. 2007). A state court decision involves an *unreasonable* application of clearly established law if the state court identifies the proper rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. Williams, 481 F.3d at 498. To find whether Supreme Court precedent has been unreasonably applied, the question is not whether the state court's application was "clearly erroneous", but rather whether the decision was "objectively unreasonable." Williams, 481 F.3d at 498.

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner's claim of ineffective assistance of counsel falls under the U.S. Supreme Court precedent of Strickland v. Washington, 466 U.S. 668 (1984). To prevail under Strickland, a petitioner

must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's alleged errors and omissions, there is a reasonable probability that the outcome of the trial would have been different.  Strickland, 466 U.S. at 687; Lee v. Davis, 328 F.3d 896, 900 (7th Cir. 2003).  The burden is even higher, however, for habeas review of a State court decision, as "[u]nder AEDPA establishing that a [S]tate court's application of the Strickland standard was 'unreasonable' is a tall task, and 'only clear error in applying Strickland will support a writ of habeas corpus.'" McAfee v. Thurmer, 589 F.3d 353, 356 (7th Cir. 2009), quoting Allen v. Chandler, 555 F.3d 596, 600 (7th Cir. 2009).  The habeas petitioner must overcome the strong presumption that counsel's conduct was reasonable and that the challenged action might be considered sound trial strategy, as strategic choices are "virtually unchallengeable." McAfee, 589 F.3d at 356, quoting Strickland, 466 U.S. at 689.

   The State court decision under review here is the last to pass on the merits of Petitioner's claim, which would be the Fourth District Appellate Court Order of September 29, 2009.  Although the court did not cite to Strickland in the ineffective assistance of trial counsel portion of its analysis (it had cited and discussed Strickland earlier in the Order in its analysis of Petitioner's ineffective assistance of appellate counsel claim), this court agrees with Respondent that that does not entitle Petitioner to habeas relief under AEDPA's "contrary" prong.  See Early v. Packer, 537 U.S. 3, 8 (2002) (state courts need not cite to controlling federal or Supreme Court cases, nor even be aware of such cases, so long as neither the reasoning nor the result of the state court decision contradicts them).

Here, the Fourth District, in its analysis, found that Petitioner's claim of ineffective assistance of counsel were without merit.  The court agreed with the position put forward by his appellate counsel in its Finley brief, that Petitioner's claims fail because: (1) Petitioner failed to provide sufficient detail as to witnesses and the content of their statements; (2) the issue of witnesses to rebut Deviner was

discussed at the <u>Krankel</u> hearing, and other witnesses testified to the crimes; and (3) the evidence at the <u>Krankel</u> hearing demonstrated counsel prepared for trial and consulted with Petitioner.

While the Fourth District did not employ <u>Strickland</u> in its analysis, this court does not find its ruling to be contrary to or an unreasonable application of clearly established federal law. The court closely examined the <u>Krankel</u> hearing and the arguments put forth by the parties. The court made a reasonable determination that counsel was not ineffective based on the <u>Krankel</u> and trial testimony. Implicit in the court's decision was that the evidence against Petitioner was overwhelming, as other witnesses had identified him as the shooter and that Petitioner had not provided sufficient detail as to his rebuttal witnesses and what they would say, so as to overcome the presumption that defense counsel's decisions were sound trial strategy. Further, the court found that counsel had prepared for trial and consulted with Petitioner. The Fourth District's decision was well within the parameters for evaluating ineffective assistance claims established by <u>Strickland</u>, as defense counsel's performance did not fall below an objective standard of reasonableness.

Likewise the Fourth District's ruling did not result in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding. Petitioner could not provide documentary support for his claims in the form of sworn affidavits from the Lagrones or anyone else (besides himself). Further, as pointed out by Respondent in his Answer, even if Petitioner's claims were taken at face value and his witnesses were all called to rebut Deviner's testimony, by this point there would have been severe credibility issues, as Deviner had testified the threats made against her came from the Lagrones, two of the witnesses Petitioner wished counsel to call to the stand. Counsel's decision not to call those witnesses could be viewed as sound trial strategy. Therefore, Petitioner's claim must be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts, this court declines to issue a Certificate of Appealability. Petitioner has not made substantial showing of the denial of a constitutional right as he has not shown that jurists of reason would find it debatable whether his petition states a valid claim of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED:

(1) Petitioner's Petition for Writ of Habeas Corpus By a Person in State Custody Pursuant to 28 U.S.C. § 2254 (#1) is DENIED.

(2) A Certificate of Appealability is DENIED.

(3) This case is terminated.


ENTERED this 11th day of May, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE